1  Scott M. Plamondon, State Bar No. 212294
   Shauna N. Correia, State Bar No. 232410
2  **weintraub tobin** chediak coleman grodin
   LAW CORPORATION
3  400 Capitol Mall, 11th Floor
   Sacramento, CA 95814
4  Telephone:   916/558.6000
   Facsimile:   916/446.1611
5
6  Attorneys for WALGREEN CO.
7
8                    UNITED STATES DISTRICT COURT
9                    NORTHERN DISTRICT OF CALIFORNIA
10
11 EQUAL EMPLOYMENT OPPORTUNITY           ) Case No. 3:11-CV-04470
   COMMISSION,                            )
12                                        )
            Plaintiff,                    )
13                                        ) DEFENDANT'S REPLY MEMORANDUM OF
       v.                                 ) POINTS AND AUTHORITIES IN SUPPORT
14                                        ) MOTION FOR SUMMARY JUDGMENT OR,
   WALGREEN CO.,                          ) IN THE ALTERNATIVE, PARTIAL SUMMARY
15                                        ) JUDGMENT
            Defendants.                   )
16                                        ) Date:       March 5, 2014
                                          ) Time:       2:00 p.m.
17                                        ) Courtroom:  2, 17th Floor
                                          )
18                                        ) Trial Date: June 2, 2014
                                          )
19
20
21
22
23
24
25
26
27
28

{1731323.DOC;}

Table of Contents

I. INTRODUCTION ................................................................................................. 1

II. THE MATERIAL UNDISPUTED FACTS ................................................................. 2

III. ARGUMENT ....................................................................................................... 3

    A. Excusing Employee Theft After an Employee Is Caught Stealing is an Unreasonable Accommodation ................................................................ 4

        1. Employers are Permitted to Discharge a Disabled Employee for Theft or Other Misconduct If the Employer's Conduct Rule is Job-Related, Consistent with Business Necessity and Other Employees are Held to the Same Standard ................................................................... 4

        2. Employers are Never Required to Waive Conduct Rules for Employees Who Retroactively Request Accommodation Only After They Have Committed Misconduct ........................................................................ 6

    B. Although the Authority cited by the EEOC Extends the Reasonable Accommodation Analysis to Misconduct that is Caused By a Disability, those Cases Do Not Require Employers to Accept Unreasonable Accommodations ...... 8

    C. Even Assuming that Hernandez's Diabetes Required Her to Steal, The EEOC Has Failed to Establish Pretext ................................................................... 11

    D. Title VII Expressly Prohibits the EEOC from Bringing Claims Contrary to its own Guidelines and this Lawsuit is Barred as a Matter of Law ..................... 13

    E. Punitive Damages are Unavailable in this Case ............................................. 14

IV. CONCLUSION .................................................................................................. 14

V. OBJECTIONS TO EEOC'S EVIDENCE ................................................................ 15

Table of Authorities

Cases

*Bloodstock Research Info. Servs. v edbain.com, LLC* (2009, ED Ky) 622 F Supp 2d 504 ....... 15

*Castro v. Potter*, 2007 U.S. Dist. LEXIS 46317 ................................................................. 10

*Cripe v. City of San Jose*, 261 F.3d 877 (9th Cir. Cal. 2001) ................................................ 4

*Dark v. Curry County*, 451 F.3d 1078 (9th Cir. 2005) ......................................................... 9

*EEOC v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734 (S.D. Fla, 1989) ........................ 5

*EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103 (9th Cir. Cal. 2010) ........................... 7

*Foster v. City of Oakland*, 2008 U.S. Dist. LEXIS 59673 (N.D. Cal. 2008) ........................... 7

*Furnco Constr. Co. v. Waters*, 438 U.S. 567, 578, 98 S. Ct. 2943 (1978) ........................... 5

*Gambini v. Total Renal Care, Inc.* 486 F.3d 1087, 1095 (9th Cir. 2007) ........................ 8, 10

*Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217 (9th Cir. Cal. 1998) ..................................... 11

*Gotlin v Lederman* (2009, EDNY) 616 F Supp 2d 376 ...................................................... 15

*Humphrey v. Memorial Hospital,* 239 F.3d 1128 (9th Cir. 2001) ........................................ 8

*Mayo v. PCC Structurals, Inc.*, 2013 U.S. Dist. LEXIS 91767 (D. Or., 2013) ...................... 10

*Siefken v. Village of Arlington Heights*, 65 F.3d 664 (7th Cir. 1995) ............................. 9, 10

*Taylor v. Principal Financial Grp., Inc.* (5th Cir. 1996) 93 F.3d 155, 164-165 ...................... 7

*Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 109 S. Ct. 2115, 2126 (1989) .......... 5

Statutes

28 USC section 1746 .................................................................................................... 15

42 U.S.C. § 12117 ........................................................................................................ 13

42 U.S.C. § 2000e–4(a) ................................................................................................ 13

42 U.S.C. § 2000e–4(g) ................................................................................................ 13

42 U.S.C. § 2000e-5(a) ................................................................................................. 13

42 U.S.C. section 2000e-12(b) ...................................................................................... 13

Other Authorities

Title VII of the Civil Rights Act of 1964 ........................................................................... 13

## I. INTRODUCTION

Walgreen Co. ("Walgreens") submits its reply to the Equal Employment Opportunity Commission's ("EEOC") opposition to Walgreens' motion for summary judgment, or in the alternative, partial summary judgment. The EEOC fails to raise a genuine issue of material fact sufficient to defeat Walgreens' right to summary judgment.

This is a simple case where a Walgreens employee took and consumed merchandise without paying for it. Only after she was confronted with the open and unpaid-for merchandise, did she claim that her theft was somehow the product of her disability. Taking her claim at face value, the applicable case law and the EEOC's Guidelines provide that requiring any employer to deviate from a uniformly-applied, job-related policy which is consistent with business necessity, such as Walgreens' anti-employee-theft policy, which requires termination in all instances of theft, is never a reasonable form of accommodation. Similarly, the EEOC's Guidelines and case law also provide that, where the offense is one warranting discharge (such as employee theft), it never would be reasonable to require employers to make exceptions to their uniformly applied rules.

Walgreens has demonstrated that Josefina Hernandez ("Hernandez") never sought a *reasonable* accommodation and that her discharge falls squarely within the "business necessity" exception, the EEOC has completely failed to dispute this issue or offer any evidence that Walgreens' stated reason for termination is a pretext for discrimination. In fact, the EEOC acknowledges in its Complaint, and again in its Opposition, that Walgreens' stated reason for Hernandez's termination is true. The EEOC instead argues for an absolute protection from adverse employment actions based on any disability related conduct – a concept that the 9th Circuit has specifically rejected.

The EEOC's argument ignores the fact that the cases cited in its Opposition, the EEOC's published Guidelines, and the cases cited by Walgreens are, in fact, consistent with each other. All stand for the proposition that employers are required to make *reasonable* accommodations for misconduct that is caused by a disability to the same extent as they do for the restrictions underlying a disability. The fact that misconduct might require a *reasonable*

accommodation is not an absolute protection vindicating any form of misconduct related to a disability. Instead, just as with more typical disability-related limitations, when the need to accommodate disability-related misconduct was not obvious and only is sought after the employee violates a work rule related to business necessity, it is not reasonable to require the employer to make an exception to the uniformly applied consequences.

Finally, the fact that the EEOC's lawsuit is premised on a position contradicting its own Guidelines forms a separate and additional reason to grant summary judgment. The EEOC was created by Title VII and charged with providing guidance, training, and assistance to employers in compliance with the law (and it receives federal funding to that end). The EEOC is both forbidden by Title VII and estopped by common law from litigating any position contrary to its own published Guidelines. Accordingly, based on the undisputed material facts, and for the reasons stated in Walgreens' Motion for Summary Judgment and in this Reply, Summary Judgment must be granted.

## II. THE MATERIAL UNDISPUTED FACTS

The EEOC's opposition, though raising minor factual issues, fails to raise a *genuine issue of material fact* sufficient to defeat Walgreens' right to summary judgment. Even following the EEOC's opposition, the undisputed material facts remain as follows:

1. Hernandez opened and ate chips without paying for them first. [Hernandez Depo., Exh. B to Plamondon Dec., pp. 253:11-17, 258:12-15; Hernandez Depo., Exh. C to Plamondon Dec., p. 63:3-9; Clark Depo., Exh. H to Plamondon Dec., p. 40:6-11.]

2. Hernandez was terminated for violating Walgreens' policy against taking and consuming merchandise without paying for it first. [Balestieri Depo., Exh. I to Plamondon Dec., pp. 26:2-17, 28:9-15; 34:10-18.]

3. Walgreens' policy against employee theft in the form of "grazing" is uniformly applied without regard to an employee's intent. [Balestieri Depo., Exh. I to Plamondon Dec., pp. 26:22-27:18; Clark Dec., ¶5.]

4. Walgreens incurs significant losses from employee theft. [Clark Dec., ¶8, Exh. C.]

5. Walgreens knew Hernandez had diabetes. [Hernandez Depo., Exh. A to Plamondon Dec., pp. 69:14-71:14; Hernandez Depo., Exh. B to Plamondon Dec., pp. 233:7-234:14.]

6. In the 13 years that she worked for Walgreens after being diagnosed with diabetes, Walgreens never prevented Hernandez from having her own candy with her or to take additional breaks to test her blood sugar or eat. [Hernandez Depo., Exh. A to Plamondon Dec., p. 75:8-23, 96:9-10, 102:2-8, 103:12-104:22; Hernandez Depo., Exh. B to Plamondon Dec., pp. 132:10-17, 182:20-183:4; 245:25-246:4, 247:2-4; ]

7. In the 13 years that she worked for Walgreens after being diagnosed with diabetes, there was only one occasion in which she had asked to take an additional break to eat food. [Hernandez Depo., Exh. A to Plamondon Dec., p. 75:8-23.]

8. In the 13 years that she worked for Walgreens after being diagnosed with diabetes, Hernandez had never asked to be permitted to consume merchandise without paying for it; and Walgreens was unaware of any condition which might require her to need to do so. [Hernandez Depo., Exh. A to Plamondon Dec., p. 75:8-23; Hernandez Depo., Exh. B to Plamondon Dec., pp. 203:13-20, 229:20-230:13; Plamondon Dec. at ¶14.]

### III. ARGUMENT

#### A. Excusing Employee Theft After an Employee Is Caught Stealing is an Unreasonable Accommodation

Incredibly, the EEOC's claims are premised on the proposition that a retail cashier should be permitted to take merchandise and consume it without paying for it. Although the EEOC rationalizes its position based on Hernandez's diabetic condition, nothing about Hernandez's disability or an after-the-fact request for accommodation ever would turn a retroactive request to steal into a reasonable accommodation. The EEOC's Opposition is based on a deeply flawed analysis ultimately resulting in erroneous conclusions regarding the applicable law. Its argument is belied by the EEOC's current Guidelines addressing the key questions posed by Walgreens' Motion:

> **9. If an employee's disability causes violation of a conduct rule, may the employer discipline the individual?**
>
> Yes, if the conduct rule is job-related and consistent with business necessity and other employees are held to the same standard. [n 38] *The ADA does not protect employees from the consequences of violating conduct requirements even where the conduct is caused by the disability.* [n 39] ...
>
> **10. What should an employer do if an employee mentions a disability and/or the need for an accommodation for the first time in response to ... discipline for unacceptable conduct?**
>
> If an employee states that her disability is the cause of the conduct problem or requests accommodation, the employer may still discipline the employee for the misconduct. *If the appropriate disciplinary action is termination, the ADA would not require further discussion about the employee's disability or request for reasonable accommodation.* [n 49]

{1731323.DOC;} 3

(See Declaration of Shauna N. Correia In Support of Defendant's Motion for Summary Judgment, or in the Alternative Partial Summary Judgment (hereinafter "Correia Dec."), **Exhibit A**, retrieved February 14, 2014 from the EEOC's website;[1] accord, see **Exhibit B**, dated January 19, 2011 and retrieved from the EEOC's website on February 14, 2014[2] (italics added).) The EEOC's Guidelines as they existed at the time Walgreens terminated Hernandez were substantially the same: "Since reasonable accommodation is *always prospective*, an employer is not required to excuse past misconduct even if it is the result of [a] disability" … "an employer *never* has to tolerate or excuse … stealing[.]" (See, Correia Dec., **Exhibit C**, retrieved February 14, 2014[3] (emphasis added).)

Even if her need to take food merchandise without paying for it somehow had been caused by her disability, because Walgreens' anti-theft rules are premised on a business necessity and are uniformly applied, it never would have been a reasonable accommodation to require Walgreens to allow violations of these rules. Likewise (to the extent Hernandez's informing Walgreens that her sugar was low was a request for accommodation at all), Hernandez's failure to seek accommodation *before* she committed misconduct also renders her request unreasonable. Accordingly, because Walgreens never is required to grant any form of unreasonable accommodation, summary judgment must be granted.

1. **Employers are Permitted to Discharge a Disabled Employee for Theft or Other Misconduct If the Employer's Conduct Rule is Job-Related, Consistent with Business Necessity and Other Employees are Held to the Same Standard**

When other employees are held to the same standard, employers are permitted to enforce job-related conduct rules that are consistent with business necessity. This is especially true where, when violated, such rules require termination. A policy is based on "business necessity" if it substantially promotes the needs of a business. *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. Cal. 2001). The employer's policy need not be "essential" or "indispensable" to its business needs. *EEOC v. Carolina Freight Carriers Corp.*, 723 F. Supp.

---

[1] http://www.eeoc.gov/facts/performance-conduct.html (revised and updated as of January 19, 2011).
[2] http://www.eeoc.gov/facts/restaurant_guide.html
[3] http://www.eeoc.gov/policy/docs/accommodation.html

{1731323.DOC;} 4

734 (S.D. Fla, 1989). If the policy is necessary and not a "mere insubstantial justification" the defendant has articulated business necessity. *See Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 109 S. Ct. 2115, 2126 (1989).

In *Carolina Freight*, the EEOC unsuccessfully asserted that an employer's policy rejecting all job applicants who had been convicted of a felony, theft, or larceny had a disparate impact upon Hispanic applicants. Carolina Freight, which ships goods, stated that its policy was based on a "need to minimize losses from employee theft." *Id*. at 754. This explanation was sufficient to establish that the policy was based on business necessity. The court held that in light of Carolina Freight's stated business necessity, and "[w]ith the lack of contrary proof from the [EEOC], this court will not overturn the employer's judgment." *Id*., citing *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 578, 98 S. Ct. 2943 (1978).

Here, Walgreens has articulated the business necessity behind its anti-theft policy: the need to minimize losses from employee theft. Walgreens already has articulated the unfortunate fact that employee theft causes Walgreens to incur losses of approximately $350,000,000 each year. (*See*, Clark Dec., ¶¶ 8-9.) Avoiding such losses directly promotes Walgreens' "business needs" by setting forth a conduct policy for all its employees which is directed at deterring employee theft, by informing its employees that, *without exception*, theft of cash or merchandise of any value always will result in termination.

The EEOC's obsessive focus on the low value of the item taken by Hernandez is misplaced. Whether an employee has taken a $1.39 bag of chips or an expensive medication from the pharmacy, is irrelevant. Walgreens' business necessity is the same: deterring employee theft. To force Walgreens to excuse violations of its anti-theft policy flies in the face of the EEOC's own unequivocal guidelines and public policy, and would be unreasonable. Accordingly, here, as in *Carolina Freight*, where the EEOC has offered no contrary proof, and does not even dispute the fact that Walgreens' policies are based on business necessity, the court cannot set aside Walgreens' business judgment in the enactment and enforcement of this policy. Walgreens' application of its uniformly applied policy against theft, based on business necessity, is therefore justified, and as the EEOC's Guidelines make clear, it is unreasonable to

ask an employer to excuse a violation of such a policy, even where the violation was purportedly caused by the individual's disability. Because it is an unreasonable accommodation to require Walgreens to make exception to this uniformly applied conduct rule, summary judgment must be granted.

### 2. Employers are Never Required to Waive Conduct Rules for Employees Who Retroactively Request Accommodation Only After They Have Committed Misconduct.

Asking Walgreens to make an exception to its rule requiring termination in all cases where an employee is caught stealing is unreasonable, particularly where Walgreens had no prior notice of a need for such an accommodation. The EEOC agrees. Through its own Guidelines, it informs employees and employers alike that it would be unreasonable to require employers to waive discipline rules, particularly rules requiring termination, when an employee mentions a need for an accommodation for the first time in response discipline for unacceptable conduct. "Reasonable accommodation is always prospective…an employer is not required to excuse past misconduct." (EEOC Guidelines, Question 36; *See* Correia Dec., **Exhibit C**). "If the appropriate disciplinary action is termination, the ADA would not require further discussion …. [FN 49]." (EEOC Guidelines, Question 10; *See* Correia Dec., **Exhibit A**.)[4]

Hernandez's alleged need to take merchandise without paying for it was never obvious or readily apparent. It is undisputed that, for 13 years following her diagnosis, Hernandez performed her job without need for such accommodation. [Hernandez Depo., Exh. B to Plamondon Dec., pp. 132:10-17, 203:13-20, 205:21-23; 245:25-246:4, 247:2-4; Hernandez Depo., Exh. C to Plamondon Dec., pp. 77:17-78:9.] It is undisputed that Hernandez never notified Walgreens of any limitations created by her disability. [Hernandez Depo., Exh. B to Plamondon Dec., p. 203:13-20; Hernandez Depo., Exh. C to Plamondon Dec., pp. 77:17-78:9; Plamondon Dec., ¶14.] She always had been able to perform her job duties by availing herself of the benefits permitted to all employees: breaks as needed, a place

---

[4] http://www.eeoc.gov/facts/performance-conduct.html#fn49

{1731323.DOC;} 6

to keep food and medicines, and carrying candy in her pocket. [Hernandez Depo., Exh. A to Plamondon Dec., pp. 96:9-10, 102:2-8, 105:6-18, 105:19-106:2; Hernandez Depo., Exh. B to Plamondon Dec., pp. 132:10-17, 182:20-183:4, 205:21-23, 245:25-246:4, 247:2-4.] Hernandez's treating physician testified that these were adequate to accommodate her limitations. [Austria Depo., Exh. E to Plamondon Dec., pp. 88:8-89:22.] On the one prior occasion in 13 years when she mentioned feeling shaky, management allowed her a break to eat.[5] Neither Hernandez's limitations nor a need for any different accommodation were obvious or readily apparent; she therefore had the affirmative obligation to prospectively request further accommodations. (*Foster v. City of Oakland*, 2008 U.S. Dist. LEXIS 59673, 6 (N.D. Cal. 2008) citing *Taylor v. Principal Financial Grp., Inc*. (5th Cir. 1996) 93 F.3d 155, 164-165.) Recognizing this requirement, the EEOC's Guidelines explicitly instruct employees that "it may be in the employee's interest to request a reasonable accommodation before … conduct problems occur." (EEOC Guidelines,[6] see Correia Decl., **Exhibit C** at FN 103.)

Requiring an employee to prospectively request an accommodation furthers the goal of the interactive process and allows the employer to determine the accommodation that meets the needs of the employee as well as its business needs. *See EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110-1111 (9th Cir. Cal. 2010) (employer not obligated to grant employee's requested or preferred accommodation), citing EEOC's Interpretive Guidance on Title I of the ADA, 29 C.F.R. Part 1630, App., 56 Fed. Reg. 35,726-01, 35,749 (July 26, 1991). Had she requested accommodation prior to engaging in misconduct, Walgreens could have determined what, short of permitting theft, would have been reasonable. Her failure to do so makes her retroactive request unreasonable.

Based on the foregoing, Hernandez's request for an exception to a policy that uniformly requires discharge for theft, made only after she was caught stealing, is unreasonable. Walgreens was not obligated to grant this accommodation even if her diabetes caused her to steal.

---

[5] This demonstrates that a reasonable alternative to stealing merchandise was available to her.
[6] These Guidelines, revised October 22, 2002, was accessed on the EEOC's website on February 13, 2014 http://www.eeoc.gov/policy/docs/accommodation.html

{1731323.DOC;} 7

B. **Although the Authority cited by the EEOC Extends the Reasonable Accommodation Analysis to Misconduct that is Caused By a Disability, those Cases Do Not Require Employers to Accept Unreasonable Accommodations.**

The cases cited by the EEOC stand for the proposition that the law requires a reasonable accommodation for conduct caused by a disability to the same extent as such accommodations are made for the restrictions underlying the disability. These cases do not provide an absolute protection from adverse employment actions based on disability related conduct. Instead, just as with the restrictions underlying a condition, an employer's obligation to make accommodations for conduct related to a disability is still limited to those accommodations that are reasonable. Indeed, both the Ninth Circuit and this District Court have explicitly preserved an employer's right to refuse unreasonable accommodations like the one requested here.

In *Gambini v. Total Renal Care, Inc.* 486 F.3d 1087, 1095 (9th Cir. 2007), for example, the court stated that the law "in no way provides employees with *absolute* protection from adverse employment actions based on disability-related conduct." *Gambini*, at 1095. As if the Ninth Circuit Court anticipated the EEOC's arguments in this case, the *Gambini* Court also stated that its decision was not "controversial and sweeping," and that a "defendant would still be entitled to raise a business necessity . . . defense." *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1095 (9th Cir. Wash. 2007). *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1091. As a result, accommodation requests such as those presented here continue to be unreasonable where they violate a uniformly applied employer policy that is consistent with business necessity.

Similarly, in *Humphrey v. Memorial Hospital,* 239 F.3d 1128 (9th Cir. 2001), Ms. Humphrey, a medical transcriptionist, suffered from obsessive-compulsive disorder and sought to modify existing accommodations after several prior accommodation efforts had proved insufficient to allow her to arrive to work on time. Her new prospective request for accommodation was to work at home. Although her job was well suited to working from home, and the Hospital had allowed other employees to do so, it rejected Humphrey's request and terminated her employment following a subsequent violation of attendance rules. See

*Humphrey* at 1133. The *Humphrey* court denied the Hospital's claim that Humphrey's violation of attendance policies justified her termination because the Hospital already was aware that Ms. Humphrey's disability was causing her to violate attendance rules, and the requested accommodation was obviously reasonable since it had been provided to other employees. *Humphrey* does not address situations where, as is the case here, an employee's limitations were neither obvious nor communicated to the employer prior to misconduct and the requested accommodation only sought an after the fact exception to a uniformly applied conduct rule that is consistent with business necessity.

As explained in Walgreens' moving papers, *Siefken v. Village of Arlington Heights*, 65 F.3d 664 (7th Cir. 1995), has been adopted by the Ninth Circuit as well as this District Court, and is instructive. As is readily apparent, the key distinction between the applicable cases is that, in contrast to *Siefken* and the instant case, *Humphrey* and *Gambini* involved situations where an employee's limitations were obvious, they had notified their employer of disability-related limitations, and sought reasonable accommodations *before* committing misconduct. This distinction has been expressly recognized by Courts within the Ninth Circuit.

*Siefken* involved a police officer who, due to a failure to control his disease, experienced a diabetic episode which caused him to speed through residential areas in his police car. *Siefken*, 65 F.3d 664. When Siefken's employment was terminated because of this misconduct, he requested a "second chance" to better control his disease in the future. *Id*. at 666. The *Siefken* court held that, where an employee has a disability but has needed no accommodation to manage its limitations, and only requests accommodation after committing misconduct, an employer is not required to retroactively accommodate a disability by rescinding termination, or waiving polices. *Id*. at 667.

Similarly, in *Dark v. Curry County*, 451 F.3d 1078 (9th Cir. 2005) (cited in the EEOC's Opposition), Mr. Dark suffered a seizure while driving a County-owned vehicle. Curry County subjected Mr. Dark to a medical evaluation to determine whether he was still able to perform his job. *Dark* at 1085-86. Concluding that he would not be able to do so, the County terminated him. *Id*. Explicitly referencing the holding in *Siefken*, the Court described the

critical distinction that controls in the instant case. The Court stated that Mr. Dark, "unlike Siefken, actually needs an accommodation and requests a change in the ordinary terms and conditions of his work – not simply a 'second chance' to change his own behavior." *Id*. Accordingly the 9th Circuit in *Dark* recognized that an employer may lawfully terminate a disabled employee for misconduct occurring before the employee made a request for accommodation, even where the misconduct was the product of the disability.

Recently, an employee's failure to provide notice of a limitation or need for accommodation was determinative in granting an employer's motion for summary judgment. *See Mayo v. PCC Structurals, Inc.*, 2013 U.S. Dist. LEXIS 91767 (D. Or., 2013). In *Mayo*, PCC Structurals, Inc. ("PCC") discharged Mr. Mayo, who had an undiagnosed mental disorder, because he threatened to kill his supervisors. Summary judgment was granted because PCC never had been informed of Mayo's limitations until *after* the misconduct occurred, and PCC's policy required termination of all employees who violated its anti-violence policy. *Id*. at *8. In doing so, the Court expressly declined to extend *Gambini,* holding that, "*Gambini* had *explained her medical condition to her supervisor and requested accommodations prior to her problems surfacing at work*. PCC *had no warning* from Mayo about his deteriorating mental state until *after* Mayo threatened to kill his supervisors." *Id*. at 13 (emphasis added).

This Court also has applied the standard set forth in *Siefken*. In *Castro v. Potter*, 2007 U.S. Dist. LEXIS 46317, the Northern District of California granted summary judgment in a disability discrimination case where an employee failed a fitness for duty test as a result of an uncontrolled disability and was terminated. *Castro* at *13. This Court adopted and applied the *Siefken* analysis, finding it "instructive." *Id*., citing *Siefken* at 665-666 (internal quotations omitted).

The facts in the present case are analogous to the situations examined in *Siefken*, *Mayo*, and *Castro*, and those cases are instructive as to the appropriate outcome. The *Siekfen* and *Gambini* lines of cases are consistent with each other: the fact that conduct requires a reasonable accommodation is not an absolute protection for conduct related to a disability.

Instead, when a need for an accommodation is not obvious and an exception is only sought after the employee engages in misconduct that violates a work rule related to business necessity, it is unreasonable to require the employer to make an exception to the uniformly applied consequences for such misconduct. Here, Hernandez never notified Walgreens that her diabetes might require her to steal merchandise; rather, like Siefken, Hernandez only sought an exception for an already-committed violation of a Walgreens policy which mandates termination in all cases. Based on the authority discussed herein, such an accommodation is unreasonable and summary judgment must be granted.

C. Even Assuming that Hernandez's Diabetes Required Her to Steal, The EEOC Has Failed to Establish Pretext.

There is no evidence that Hernandez's diabetes caused her to steal merchandise. Hernandez admitted that her hypoglycemic episode was not an emergency, and that she could have treated herself through several other methods which would not have been in violation of a Walgreens policy requiring termination for theft. Even accepting the argument, however, that Hernandez's diabetic condition required theft, the EEOC cannot establish that Walgreens' reliance on its uniformly applied policy was a pretext for disability discrimination.

To establish pretext the EEOC was required to demonstrate through "specific, substantial evidence" that Walgreens' stated reason for Hernandez's termination was "unworthy of credence." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-21 (9th Cir. Cal. 1998). The EEOC does not even argue that the stated reason was unworthy of credence; it instead states that Walgreens terminated Hernandez for theft without considering her disability, thus conceding the point.

The EEOC offers only a convoluted and immaterial argument about whether or not Hernandez later paid for the chips; however, whether Hernandez eventually paid for the chips after she had already opened and consumed them is irrelevant. Walgreens' policy requires employees to pay for food merchandise *before* opening it. It is undisputed that Hernandez did not pay for the chips prior to consuming them and had not paid for them by the time her conduct was discovered by management. Furthermore, because each of the other employees caught taking merchandise who also later paid for it still were terminated, whether Hernandez

ever paid for the chips after being caught never would change the outcome, she still would have been terminated. *See*, **Exhibit B** to Clark Dec. (Incident Reports) and Walgreens' Motion, pp. 7-8.

Next, in an ill-conceived attempt to fabricate a disputed fact, the EEOC misrepresents Clark's Incident Report and asserts Clark's story has changed – it has not. Clark's report explicitly states that it captures the statements made to him by Bob Balistieri and Josefina Hernandez during the investigation. The EEOC disingenuously attributes a quoted statement in the Incident Report that "She did pay for the chips prior to going home that day," to being Clark's own conclusion, in spite of the fact that the Incident Report shows that the statement is Balistieri's.[7] Correia Dec., **Exhibit E**. The fact that Clark later checked store sales records and could not substantiate what Hernandez asserted, and what Balistieri believed, is not contradictory.[8]

The "evidence" of Clark's supposed inconsistent statements that the EEOC points to is irrelevant to show pretext. It is undisputed that it was Mr. Balistieri (not Mr. Clark) who made the decision to terminate Hernandez, and that he did so by applying Walgreens' policy requiring termination of all employees who take and consume merchandise before paying for it. The EEOC has no evidence of discriminatory animus, direct or otherwise. Hernandez admitted, and the EEOC acknowledges, that Hernandez violated Walgreens' policy, and no debate about Clark's admissions or whether Hernandez eventually paid for the chips will change the effect of Hernandez's admission.

Because its manufactured "facts" are demonstrably false and irrelevant, no evidence of pretext has been put forth. Furthermore, because the EEOC's Complaint and Opposition to this motion both acknowledge that Walgreens applied its anti-theft policy uniformly, under all circumstances, the EEOC cannot now abandon the effects of these acknowledgements – they admit that Walgreens' stated reason for terminating Hernandez is true. Based on the absence

---

[7] Per Local Rule 7-3, Walgreens objects that the "evidence" relating to the contents of Clark's report is inadmissible, as the document speaks for itself, and more significantly, the "evidence" is not relevant.

[8] Clark's report and testimony was that he was unable to locate sales records confirming Hernandez's purchase. The EEOC's objection to Walgreens' alleged failure to produce non-existent records is bizarre and improper.

weintraub tobin chediak coleman grodin
LAW CORPORATION

of a genuine issue in dispute, as well as these binding admissions, the EEOC has failed to demonstrate pretext, and summary judgment must be granted.

D.  Title VII Expressly Prohibits the EEOC from Bringing Claims Contrary to its own Guidelines and this Lawsuit is Barred as a Matter of Law.

The EEOC was established by provisions of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–4(a). Like any law that originates a government entity, Title VII is the EEOC's charter, and sets forth the rules under which the EEOC operates, both establishing its authority and limiting the scope of its powers. U.S.C. § 2000e-5(a). When it legislated the EEOC into existence, Congress gave the EEOC the authority to publish guidelines. 42 U.S.C. § 2000e–4(g). Understanding that the EEOC's Guidelines would be relied upon by employers to implement day-to-day business practices, Congress expressly prohibited the EEOC from taking actions against employers who have relied on those guidelines. 42 U.S.C. § 2000e-5(a). Although it continues to maintain published Guidelines in myriad places on its own website informing employers that they are permitted to take actions like those at issue in this case, the EEOC seeks to punish Walgreens for following these same Guidelines. This lawsuit is thus an unlawful violation of the statutory limitations on the EEOC's authority.

The EEOC's claim, that the limitations on its authority by the very statutes that give rise to its existence do not apply because the ADA does not expressly incorporate them, is absurd. The mere fact that the EEOC has invoked its powers under Title VII to bring a lawsuit under the ADA does not permit it to violate the statutes which both create and limit its authority. The provision of Title VII which bars this lawsuit is clear and unequivocal, and contains no exceptions to the rule forbidding the EEOC from initiating litigation which contradicts its own Guidelines. 42 U.S.C. section 2000e-12(b) (defense applies to "*any* action or proceeding based on *any* alleged unlawful employment practice" (emphasis added)). Regardless, the ADA expressly incorporates Title VII into its enforcement provisions. 42 U.S.C. § 12117. Furthermore, the EEOC's argument is belied by the contents of its own Complaint, which specifically incorporates Title VII into its claims. See Complaint ¶1.

The EEOC next incredibly claims that it is not restricted by Title VII because its Guidelines are "outdated." First, this is undermined by the fact that the Guidelines existed

before the internet, and were later consciously published on the EEOC's website. These published Guidelines continue to appear in multiple different formats on the EEOC's website as well as the EEOC's other published guidance on the exact topics raised in this lawsuit. The EEOC's Guidelines were updated in 2002 and again as recently as 2011, several years *after* the cases which purportedly alter the Guidelines, and still include the same guidance upon which Walgreens has relied. Most significantly, the footnotes to the Guidelines cite recent case law, including *Siefken* and support each of Walgreens' arguments herein. The EEOC's attempts to escape the statutorily created limitations on its authority because it has allegedly failed to update its own Guidelines are completely without merit.

The EEOC has no defense or explanation for its violation of the express language of Title VII, and this lawsuit is barred and unlawful. Even if the provisions of Title VII did not apply, the EEOC still would be unable to escape the common law doctrines of judicial and administrative estoppel which apply where the government initiates litigation contrary to its own rules, and in violation of its own laws. Walgreens therefore respectfully requests that the Court grant summary judgment.[9]

E.    Punitive Damages are Unavailable in this Case

The EEOC has offered no evidence demonstrating that any Walgreens employee operated in reckless disregard of a violation of the law. The EEOC's argument admits that Walgreens followed its uniformly applied policy to terminate individuals who consume food merchandise without paying for it, and the EEOC's own opposition graphically demonstrates that Walgreens' policy is a nearly verbatim recitation of the EEOC's own Guidelines on the same topic. *See* Opposition p. 16, lines 18-20.

IV.    CONCLUSION

As the undisputed facts make clear, the accommodation at issue in this case is inherently unreasonable. Here, Hernandez's manager Balistieri applied a policy requiring termination for theft, which Walgreens uniformly applies to employees who consume

---

[9] While it has been and remains unlawful for the EEOC to litigate this case, Title VII would not have precluded Hernandez from bringing claims had she elected to litigate this case without the EEOC's involvement (although it would not change the ultimate outcome, as summary judgment is required on the other grounds stated herein).

merchandise without paying for it. Walgreens' policy is based on business necessity and Hernandez did not request an exception until after she was caught, nor would such an exception have been reasonable. The EEOC's argument that disability related conduct has an absolute protection from adverse employment actions is defective. The cases relied upon by the EEOC and its own Guidelines state exactly the opposite. Instead, these cases stand for the proposition that conduct related to a disability might require a *reasonable* accommodation. Here, because the requested accommodation is *unreasonable*, and the EEOC has failed to establish any evidence of discriminatory animus or pretext, summary judgment must be granted. Separately, summary judgment is appropriate because the EEOC is barred from bringing this action because it is in direct contradiction to its published Guidelines.

Accordingly, for these and the other reasons stated herein, summary judgment must be granted. Alternatively, Walgreens seeks partial summary judgment on the issue of whether punitive damages are available in this case.

## V. OBJECTIONS TO EEOC'S EVIDENCE

Pursuant to Local Rule ("LR") 7-3(a), these objections are incorporated into this brief.

1. The EEOC's Objections to Evidence (Docket #74) fails to comply with LR 7-3 and therefore should not be considered. Walgreens moves to strike these Objections.

2. The Declarations of Peter F. Laura (Docket #75) and Cindy O'Hara (Docket #78) are inadmissible. Neither Declaration was made under penalty of perjury, as required by 28 USC section 1746. *See Gotlin v Lederman* (2009, EDNY) 616 F Supp 2d 376 (Witness statement inadmissible because it contained no statement that witness was subject to perjury for any falsities, and no reference to United States law); *Bloodstock Research Info. Servs. v edbain.com, LLC* (2009, ED Ky) 622 F Supp 2d 504 (declarations submitted in opposition to summary judgment motion not made within meaning of 28 USC section 1746 where declaration was not made punishable by perjury). Walgreens moves to strike these Declarations.

Dated: February 18, 2014

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

By: /s/ Scott M. Plamondon
Scott M. Plamondon, Attorneys for WALGREEN CO.