UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISION,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN CO.,<br><br>Defendant. | Case No. 11-cv-04470-WHO<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 66 |

In the midst of a hypoglycemic attack, Walgreens's employee Josephina Hernandez grabbed a $1.37 bag of potato chips from the store shelf to stabilize her condition. Walgreens fired her for violating its anti-grazing policy. I must decide if there are material questions of fact for the jury on whether Walgreens is entitled to enforce its uniformly-applied policy against an employee whose alleged misconduct was caused by her disability. There are numerous material issues in dispute and I DENY Walgreens's motion for summary judgment.

## BACKGROUND

Hernandez worked for Walgreens for 18 years.[1] In 1995, about five years after Hernandez started working for Walgreens, Hernandez was diagnosed with Type II diabetes. Walgreens knew that Hernandez had diabetes. In the 13 years that Hernandez worked for Walgreens after being diagnosed with diabetes, Walgreens allowed Hernandez to possess candy in case of low blood sugar, keep her insulin in the break room refrigerator, and take additional breaks to test her blood sugar or eat because of her diabetes. In that 13 year time period, there was only one time when Hernandez asked to take an additional break to eat food because of low blood sugar. In that same

---

[1] The following facts are undisputed unless otherwise noted. Defendant Walgreen Co. is referred to throughout as "Walgreens."

1   time period, Hernandez never asked Walgreens to be permitted to consumer merchandise without
2   paying for it first.
3        On September 17, 2008, Hernandez was returning items in a shopping cart to shelves. She
4   noticed she was shaking and sweating from low blood sugar.[2] She did not have any candy with
5   her and was in the magazine isle, so she opened a $1.39 bag of potato chips that was in the cart
6   and ate some of them. She did not notify or request assistance from a manager before she opened
7   and ate the chips.
8        After 10 minutes, when she started feeling better, Hernandez claims she went to pay for the
9   chips at the cosmetic counter (where she had been instructed to pay for store items) but no one was
10  there. Hernandez put the potato chips under the counter at her cash register and returned to
11  restocking items. The Assistant Store Manager Holly Potter found the chips and asked whose they
12  were. Hernandez said the chips were hers.[3] Potter reported Hernandez to the Store Manager,
13  Robert Balestieri, for taking the chips.[4] For the next two weeks Hernandez was on vacation.
14  When she returned, she met with Walgreens Loss Control Supervisor Marcellus Clark. When
15  asked to write a statement regarding the incident, she wrote: "My sugar low, not have time."[5]

---

[2] Walgreens contends Hernandez admitted that she was not experiencing a "hypoglycemic emergency." Mot. 5:1 (citing Hernandez Deposition at 227:12-21). The portion of Hernandez's testimony cited by Walgreens is ambiguous at best. In response to a question about whether she consumed food without paying for it first Hernandez answered: "Yes, but there's an emergency." 227:16-18. The next question was: "Well, you've never had an emergency with your diabetes, right?" To which Hernandez answered: "Yes. (in English)" *Id*. at 19-21.

[3] Clark testified that Potter told him (i) that she saw Hernandez eating the chips at the register and (ii) that she had counseled Hernandez before about eating at the register. These facts were included in Clark's "Case Inquiry Report." Declaration of Cindy O'Hara [Docket No. 81], Ex. 10. However, Potter testified that she had not seen Hernandez eating the chips at the register and had not counseled Hernandez about eating at the register before. Potter Deposition [Ex. 4 to O'Hara Decl.] at 23-24.

[4] Hernandez claims she informed Balestieri that she ate the chips because of her low blood sugar. Hernandez Depo. at 81:7-9. Balestieri testified that Hernandez gave him no explanation of why she ate the chips. Balestieri Depo. [O'Hara Decl., Ex. 5] at 17. Hernandez also claims that she went and paid for the chips, but Clark declares that he found no record of the transaction. Declaration of Marcellus Clark, ¶ 7. Plaintiff moves to strike that testimony, arguing that it lacks foundation and is arguably contradictory to his deposition testimony where Clark did not mention that there was no record of Hernandez having paid for the chips. I overrule the EEOC's objection.

[5] Hernandez claims to have explained to Clark that she ate the chips because it was an emergency situation, but Clark testified that Hernandez did not say anything to him about not having time to purchase the chips before eating them or that her blood sugar was low. Clark also testified that he was unclear and did not bother to follow up on what Hernandez's written statement ("My sugar low, not have time") meant. Clark Depo. [O'Hara Decl., Ex. 9] at 27-28, 30-31.

2

Either Clark or Balestieri told Hernandez she was suspended, and then on October 8, 2008, Balestieri told Hernandez she was terminated. Balestieri testified he was "absolutely certain" about terminating Hernandez because she took the chips in violation of Walgreens's policy, and that he believed there was no "gray area" or "discretion" under Walgreens's policy.

Walgreens incurs significant losses from employee theft, estimated at exceeding $350 million per year. In order to combat employee theft, Walgreens has a strict policy against employee theft in the form of "grazing" – eating food merchandise without paying for it first – that is applied to all employees. Hernandez knew that Walgreens had an anti-grazing policy and that employees would be terminated for violating that policy. Hernandez was terminated for violating the anti-grazing policy. While Hernandez was working at Walgreens, Balestieri and other managers in his district "consistently" terminated any employee for theft regardless of the employee's rank, employment history, or the value of the items taken.

Hernandez filed an EEOC complaint. The EEOC investigated and brought suit against Walgreens, arguing that Hernandez was terminated in violation of the Americans with Disabilities Act (ADA) and Title VII. Walgreens moves for summary judgment, arguing that Walgreens's termination of Hernandez for theft was not in violation of the law. The EEOC counters that Walgreens failed to accommodate Hernandez's known disability which caused the complained-of conduct. I heard oral argument on April 9, 2014.

**LEGAL STANDARD**

**I. SUMMARY JUDGMENT**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to

"designate specific facts showing a genuine issue for trial." *Id*. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.*W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**II. ADA**

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. § 12112(a). Title I of the ADA requires "reasonable accommodation" of employees' disabilities by their employers. Under the ADA, the term "discriminate" is defined as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To prevail on a claim of unlawful discharge under the ADA, the plaintiff must establish that she is a qualified individual with a disability and that the employer terminated her

4

because of his disability. *Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1133 (9th Cir. 2001) (citing *Cooper v. Neiman Marcus Group*, 125 F.3d 786, 790 (1997)).

## DISCUSSION

### I. REASONABLE ACCOMMODATION

#### A. Reasonable Accommodation For Theft

Walgreens argues that it can never be a reasonable accommodation to require an employer to accommodate employee theft under case law and the EEOC's own guidelines. It relies heavily on *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003), where the Supreme Court decided "whether the ADA confers preferential rehire rights on disabled employees lawfully terminated for violating workplace conduct rules." *Id*. at 46. In that case, an employee who was a drug addict was terminated for failing a drug test. The employee subsequently applied for reemployment, but was rejected by the company because of the past violation of workplace conduct rules. The Supreme Court held that the Ninth Circuit erred by conflating disparate treatment and disparate impact analyses in reviewing the summary judgment record. The Supreme Court held that for a disparate treatment claim under the ADA, courts must apply the familiar *McDonnell Douglas* burden shifting framework, and under that framework, Raytheon's application of its neutral no-rehire policy was, by definition, "a legitimate, nondiscriminatory reason under the ADA." *Id*. at 51-52. At that point, the burden should have shifted back to the employee to raise a material fact as to pretext. *Id*. at 52.

*Raytheon* did not directly address the question raised here: whether an employer under the ADA is required to make a reasonable accommodation with respect to an employee whose disability caused that employee to violate a company's workplace rule. In a footnote that the EEOC contends is *dicta*, the Supreme Court said that to the extent the Ninth Circuit "suggested that, because respondent's workplace misconduct is related to his disability, petitioner's refusal to rehire respondent on account of that workplace misconduct violated the ADA, we point out that we have rejected a similar argument in the context of the Age Discrimination in Employment Act." *Raytheon*, 540 U.S. at 54 fn.6 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)).

1  The EEOC argues that the framework applied in the Ninth Circuit to determine whether an employer is required to accommodate an employee's disability-caused violation of workplace rules is set out in *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 (9th Cir. 2001), and applied in *Dark v. Curry County*, 451 F.3d 1078 (9th Cir. 2006), a post-*Raytheon* case. In *Humphrey*, the employee alleged she was terminated for attendance problems that were caused by her disability. The Ninth Circuit noted that unlike "a simple failure to accommodate claim," an unlawful discharge ADA claim requires a showing that an employer terminated an employee because of a disability. The panel recognized, however, that as a "practical matter" the two claims merged in a case like the one at issue, "[f]or the consequence of the failure to accommodate is, as here, frequently an unlawful termination." *Id*. at 1139. The panel explained that for purposes of the ADA, "with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Id*. at 1139-40. The Court concluded that the plaintiff had presented "sufficient evidence to create a triable issue of fact as to whether her attendance problems were caused by" her disability and that "a jury could reasonably find the requisite causal link between a disability [] and Humphrey's absenteeism and conclude that MHA fired Humphrey because of her disability." *Id*. at 1140.[6]

In *Dark*, the plaintiff was a heavy-equipment operator who had epilepsy. The employer argued that it was entitled to summary judgment based on its termination of Dark because his epilepsy prevented him from performing his essential job duties and made him a threat. The Ninth Circuit recognized that in order to be a legitimate, non-discriminatory reason, the reason must "'disclaim[] any reliance on the employee's disability in having taken the employment action.'" *Id*. at 1084 (quoting *Snead v. Metropolitan Prop. & Cas. Ins. Co*., 237 F.3d 1080, 1093 (9th Cir.

---

[6] The EEOC points out that the Ninth Circuit was following a line of reasoning previously established by the Tenth Circuit in *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1086 (10th Cir. 1997). In that case, the Tenth Circuit recognized that under the ADA, "employers need not make any reasonable accommodations for employees who are illegal drug users and alcoholics. However, that is in marked contrast to all other disabilities, where the ADA does require that the employer extend reasonable accommodations. Thus, the disability v. disability-caused conduct dichotomy seems to be unique to alcoholism and drugs." *Id*. at 1086; *see also id*. at 1087 (recognizing that the "undue hardship" and "direct threat" exceptions to reasonable accommodations "also establishes that there are certain levels of disability-caused conduct that need not be tolerated or accommodated by employers.").

2001)). The Court found that because the employer expressly relied on plaintiff's disability as grounds for his termination, it could not have been a legitimate, non-discriminatory reason as a matter of law. *Id.*[7]; *see also Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1090 (9th Cir. 2007) (applying Washington disability discrimination law incorporating the *Humphrey* rule, and holding that the jury should have been instructed that conduct resulting from a disability is part of the disability and not a separate basis for termination); *Menchaca v. Maricopa Cmty. College Dist.*, 595 F. Supp. 2d 1063, 1075 (D. Ariz. 2009) (recognizing *Humphrey* rule and finding that bi-polar employee raised question of fact as to whether outburst was sufficiently egregious to fall within "potential" exception to *Humphrey* rule for conduct that was "egregious and criminal."); *Brown v. City of Salem*, 2007 U.S. Dist. LEXIS 14738, * 17 (D. Or. Feb. 27, 2007) ("Under *Dark* and *Humphrey*, it is plain that conduct resulting from the disability is considered to be part of the disability and that termination based on that conduct is unlawful.").

To support its argument, Walgreens relies on an out of circuit case, *Siefken v. Village of Arlington Heights*, 65 F.3d 664 (7th Cir. Ill. 1995). In that case, the Seventh Circuit held that a police officer who experienced a diabetic reaction causing disorientation and memory loss which resulted in Siefken driving his car at high speed through residential areas forty miles outside his jurisdiction was appropriately terminated notwithstanding the ADA. The Court rejected the plaintiff's attempt to "bootstrap his disease into the line of causation," found that plaintiff's inability to control his disability was sufficient to allow his employer to terminate him. *Id.* at 665-67. The Court will not follow the reasoning of an out of circuit decision from 1995, in the light of contrary and much more recent Ninth Circuit decisions which explicitly import an employee's disability into the causation analysis when an employee has been terminated for disability related

---

[7] Walgreens relies on *Dark* to argue that the Ninth Circuit has held that "theft" is a valid basis for termination, even if it was a direct result of an employee's disability. Motion at 11:5-7. However, the *Dark* footnote relied on by Walgreens says only that in addition to the drugs and alcohol exception to required accommodations, another exception "might" exist for "egregious and criminal conduct." *Dark*, 451 F.3d 1084 n.3. Not only does Walgreens fail to establish that the "criminal conduct" exception has been adopted in the Ninth Circuit, Walgreens fails to establish as a matter of law that Hernandez's conduct was "criminal" in light of Hernandez's alleged exigent circumstances.

7

1  "misconduct."[8]

2  Walgreens also relies on the EEOC's own guidelines, specifically "EEOC Enforcement
3  Guidance on Reasonable Accommodation and Undue Hardship 915.002" to argue that
4  accommodating theft in violation of workplace rules can never be considered a reasonable
5  accommodation. Question 35 in that guidance provides:

> Must an employer withhold discipline or termination of an employee who, because of a disability, violated a conduct rule that is job-related for the position in question and consistent with business necessity?
> No. An employer never has to excuse a violation of a uniformly applied conduct rule that is job-related and consistent with business necessity. This means, for example, that an employer never has to tolerate or excuse violence, threats of violence, stealing, or destruction of property. An employer may discipline an employee with a disability for engaging in such misconduct if it would impose the same discipline on an employee without a disability.

12 *See* http://www.eeoc.gov/policy/docs/accommodation.html#undue. Walgreens does not, however,
13 address what is "consistent with business necessity," in the context of an employee suffering a
14 hypoglycemic attack. Walgreens also does not establish – as a matter of law – that Hernandez was
15 "stealing" as contemplated by the EEOC guidance, when Hernandez testified that she attempted to
16 pay for the product (as she was taught) but was unable to because no one was at the cosmetics
17 counter and paid for the product before removing it from the store.
18 In Reply, Walgreens relies on *additional* guidance issued by the EEOC: "Applying
19 Performance And Conduct Standards To Employees With Disabilities." *See*

---

[8] Walgreens's other out-of-circuit cases are inapposite on their facts (as they addressed cases where the employees were unable to carry out essential job duties). To the extent they are contrary to Ninth Circuit precedent, they will not be followed. *See Jones v. American Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. W. Va. 1999) (upholding dismissal of postal clerk who threatened co-workers); *Ray v. Kroger Co.*, 264 F. Supp. 2d 1221 (S.D. Ga. 2003) (upholding termination of plaintiff with Tourette's syndrome from grocery store position). Walgreens's reliance on *Sena v. Weyerhaeuser Co.*, 1999 U.S. App. LEXIS 499 (9th Cir. Wash. 1999) is misplaced. That case is not only unpublished, it also addressed a disability based on alcoholism which, as noted above, falls within an exception to the *Humphrey* rule. In Reply, Walgreens also relies on *Castro v. Potter*, 2007 U.S. Dist. LEXIS 46317, 12 (N.D. Cal. June 25, 2007), which cited *Siefken* in support of an order granting summary judgment to an employer where the employee refused to take medications to control his disability. The Court found that plaintiff "has been given every opportunity to keep his job by controlling his mental illness, and has consistently failed to do so. His resulting termination under these circumstances does not constitute unlawful discrimination." *Id*. at * 13. *Castro* is wholly inapposite to this case.

http://www.eeoc.gov/facts/performance-conduct.html#fn38. In the "performance guidance" the EEOC advises that:

> 9. If an employee's disability causes violation of a conduct rule, may the employer discipline the individual?
>
> Yes, if the conduct rule is job-related and consistent with business necessity and other employees are held to the same standard. [Footnote 38] The ADA does not protect employees from the consequences of violating conduct requirements even where the conduct is caused by the disability. [Footnote 39]

What Walgreens fails to point out is that in that same guidance, the EEOC explains that the "[t]he only requirement imposed by the ADA is that a conduct rule be job-related and consistent with business necessity *when it is applied to an employee whose disability caused her to violate the rule*. [Footnote 40] Certain conduct standards that exist in all workplaces and cover all types of jobs will always meet this standard, such as prohibitions on violence, threats of violence, stealing, or destruction of property." *Id*. at Question 9 (emphasis added). Critical for the analysis here, the EEOC elaborates: "Whether an employer's application of a conduct rule to an employee with a disability is job-related and consistent with business necessity may rest on several factors, including the manifestation or symptom of a disability affecting an employee's conduct, the frequency of occurrences, the nature of the job, the specific conduct at issue, and the working environment." *Id*. The EEOC, therefore, qualifies the concept of "business necessity" as it is *applied* to a particular employee.

Here, whether it was a business necessity to treat Hernandez the same as other employees who had been fired under the anti-grazing policy when Hernandez claims taking the chips was necessitated by her medical condition is a question of fact for the jury. And, as noted above, Walgreens has not established as a matter of law that Hernandez's conduct was "stealing," much less stealing as contemplated by the EEOC guidance.[9] I conclude that the guidance relied on by

---

[9] Walgreens also relies on Question 10 from the same guidance. Reply at 3. That question, however, assumed "that the conduct rule at issue is job-related and consistent with business necessity," something that has not been established here. Question 10 is also inapposite as it addresses what the employer can and should do if the need for an accommodation is mentioned for the first time after discipline was imposed and the discipline was "warranted." Whether discipline was "warranted" here rests on disputed issues of fact.

9

1  Walgreens does not establish as a matter of law that accommodating Hernandez's conduct in this
2  case is unreasonable as a matter of law.[10]

3  In sum, it is clear that Hernandez was fired because of her "misconduct" in taking the chips
4  without paying for them. Under the Ninth Circuit case law, misconduct resulting from a disability
5  has to be considered as part of Hernandez's disability and creates a question of fact as to whether
6  Hernandez's disability was causally related to her termination. In other words, whether or not
7  Hernandez's disability was, in fact, a cause of her misconduct is a question of fact for the jury.
8  Similarly, whether Walgreens should have been required to "accommodate" her stealing as a
9  "reasonable" accommodation is for the jury to determine.

### B. Hernandez's Failure to Manage Her Disability or Request an Accommodation

Walgreens argues that Hernandez's failure to accommodate her own disability on the day in question – by failing to have candy on her as allowed by Walgreens – should insulate Walgreens's termination decision. Walgreens again relies on *Siefken v. Village of Arlington Heights*, 65 F.3d 664 (7th Cir. 1995). In *Siefken*, the Seventh Circuit found that Siefken was not actually requesting a specific accommodation of his diabetes so that he could continue to be a police officer and drive his patrol car, but instead was seeking a "second chance" after having been terminated for his erratic driving. *Id*. at 666. In response, the Court held "that when an employee knows that he is afflicted with a disability, needs no accommodation from his employer, and fails to meet 'the employer's legitimate job expectations,' . . . due to his failure to control a controllable disability, he cannot state a cause of action under the ADA." *Id*. at 667.

Here there is no evidence that Hernandez was failing to meet, or that her diabetes caused

---

[10] In Reply, Walgreens relies on cases to argue that its "business necessity" to terminate Hernandez can be determined as a matter of law. Reply at 4-6. Those cases, however, establish that the "business necessity" defense is a stringent test "which requires employers to demonstrate that qualification standards that discriminate against a class of disabled employees are nevertheless permissible because it is necessary for the operation of the employer's business." *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001). That showing, especially in this case as applied to a diabetic employee attempting to control her blood sugar level, necessarily relies on disputed questions of fact. *See also EEOC v. Carolina Freight Carriers Corp*., 723 F. Supp. 734 (S.D. Fla. 1989) (finding *after* a bench trial that employer established business necessity defense for its policy of refusing to hire applicants convicted of felony, theft, or larceny despite the disparate impact on Hispanic applicants).

10

her to fail to meet, Walgreens's "legitimate job expectations," unlike *Siefken* where diabetes caused him to fail to perform the duties of his job. Walgreens's reliance on EEOC guidance response to Question 35, discussed above, likewise does not establish that Hernandez's failure to control her diabetes on the day in question validates Walgreens's decision as a matter of law.

Walgreens also argues that the EEOC's failure to accommodate claim fails as a matter of law because Hernandez never sought the accommodation of eating food without first paying for it from Walgreens and did not give Walgreens the opportunity to accommodate her when the need allegedly arose. Walgreens relies on *Brown v. Lucky Stores*, 246 F.3d 1182 (9th Cir. 2001). In *Brown*, the Ninth Circuit recognized that an ADA plaintiff cannot argue that an employer failed to engage in the interactive process to provide a reasonable accommodation when the employee did not request an accommodation and where the employer did not know the employee needed one. *Id*. at 1188. Here, Walgreens argues that Hernandez managed her diabetes for over a decade without incident, and was allowed to keep insulin in the store refrigerator and carry candy in her pocket. However, Hernandez never asked Walgreens to also accommodate her by allowing her to violate its anti-grazing policy and, therefore, Walgreens cannot have violated the ADA.

This case is fundamentally unlike *Brown*. In *Brown*, the record did not "show that Brown was unable to request a reasonable accommodation, or that Lucky Stores knew or had reason to know that Brown had a disability preventing her from making such a request." *Id*. at 1188. Here, it is undisputed that Walgreens knew Hernandez was diabetic and that Walgreens made accommodations to Hernandez to assist her in dealing with her diabetes. Whether Hernandez was really suffering from a hypoglycemic attack that required her to eat the chips and whether the timing of that attack reasonably prevented Hernandez from seeking an accommodation from her managers prior to eating the chips are questions of fact for the jury to decide.

Walgreens also relies on *Houston v. Regents of the Univ. of Cal.*, 2006 U.S. Dist. LEXIS 27644, * 80 (N.D. Cal. May 1, 2006) to argue that Hernandez's failure to ask for an accommodation (to eat the chips) either before she did or in the time between her eating the chips and Potter discovering them, makes Hernandez's post-misconduct accommodation request "clearly unreasonable" as a matter of law because it prevented Walgreens from being able to

11

"choose an accommodation for Hernandez that was compatible with its business necessities . . . ." Motion at 14. However, *Houston* simply reiterated the well-established principle that an "employer is not required to provide the exact accommodation that an employee requests, as the right to a reasonable accommodation does not entitle a disabled employee to the best accommodation or even to the accommodation of her choosing." 2006 U.S. Dist. LEXIS 27644 at *80; *see also Foster v. City of Oakland*, 2008 U.S. Dist. LEXIS 59673, * 6 (N.D. Cal. Aug. 5, 2008) (recognizing that the "employers' knowledge of the physical and mental limitations resulting from the employee's disability is a prerequisite to the employer's obligation to make reasonable accommodations."). That principle is inapposite to the disputed facts of this case; including whether Hernandez had time to make a request for an accommodation before eating the chips, whether Hernandez was reasonably required to notify her managers of the need for an accommodation between the time she ate the chips and the chips were discovered, and relatedly whether Walgreens was reasonably entitled to notice of the need to accommodate Hernandez prior to, during, or immediately following the attack.[11]

## II. DISABILITY DISCRIMINATION

Walgreens argues that the EEOC's discrimination claim fails because the EEOC has not met its burden to show a prima facie case of discrimination. Under the ADA, a plaintiff opposing a motion for summary judgment must raise a material question of fact showing that: (i) she is disabled under the ADA; (ii) she could perform the essential functions of the job; and (iii) she was terminated because of her disability.[12] *Humphrey*, 239 F.3d at 1133. Walgreens focuses solely on

---

[11] In Reply, Walgreens relies on *Mayo v. PCC Structurals, Inc.*, 2013 U.S. Dist. LEXIS 91767, (D. Or. July 1, 2013) to argue that a request for accommodation must be made before the misconduct occurs that leads to discharge. *Mayo* dealt with an employee with undiagnosed mental health disorder that caused him to threaten co-workers. The Court granted summary judgment to Mayo not because of his failure to request an accommodation in advance of his behavior, but because a reasonable jury could *not* find that Mayo was "a qualified individual with a disability, as defined by the disability discrimination acts, because of his violent threats." *Id*. at *13.

[12] Walgreens makes a half-hearted attempt to argue that there was no medical necessity requiring Hernandez to eat the chips prior to paying or requesting an accommodation from her managers. *See, e.g.*, Motion at 4:1-3 (citing Deposition of Dr. Austria); Reply at 11:10-13. However, what Dr. Austria (Hernandez's doctor) actually testified is that when someone starts to feel dizzy, hungry and perhaps sweaty, it depends on "an individual basis" but there no "rule that you need to get it [sugar] within 30 seconds." Austria Depo. at 29:9-15, Ex. D to Declaration of Scott M. Plamondon. Dr. Austria also testified that the onset of those systems would not be "so emergent"

12

the third prong and argues that no connection exists between Hernandez's disability and her termination because the EEOC admits that Hernandez was terminated for theft. This argument, however, is simply a reiteration of Walgreens's position that Hernandez's termination should be considered without respect to her disability, a position which is contrary to Ninth Circuit precedent following *Humphrey*.

Walgreens also argues that it has shown a legitimate nondiscriminatory reason for her termination; violation of the neutral, uniformly applied anti-grazing policy. However, as the Ninth Circuit recognized, reliance on disability-caused misconduct is by its very nature not a legitimate nondiscriminatory reason under the ADA. *Dark*, 451 F.3d at 1084.

This case is also less complicated than *Dark* in a significant respect. In *Dark*, the employer argued that it had a legitimate non-discriminatory reason to fire Dark separate from the employee's disability. It contended that the misconduct that led to Dark's termination was not his epilepsy but Dark's decision to take a vehicle out despite indications that an epileptic fit was likely and failing to alert his employers and co-workers to the same. Nonetheless, the Ninth Circuit found that that County's "misconduct" justification was inconsistent with other evidence that Dark was fired at least in part because of his disability, creating a question of fact as to discrimination for the jury to determine. *Dark*, 451 F.3d at 1084-86. Here, the misconduct alleged by Walgreens that formed the basis of her termination was the taking of the chips without paying for them first, an act Hernandez claims was caused by her disability. Walgreens has failed to allege *any* misconduct that is unrelated to her disability.[13]

---

that an individual could not "call out for help" or "walk across a room to get something." *Id*. at 30:1-8. Dr. Austria's testimony does not establish that Hernandez did not need to eat the chips to control her low blood sugar or that Hernandez had time – as a matter of law – to seek approval from her managers or pay for the chips before eating them.

[13] Walgreens may argue that it had a legitimate nondiscriminatory reason to fire Hernandez because Hernandez should have paid for the chips or reported eating the chips to her managers as soon as she was able to, instead of waiting to be caught by Potter. In light of Walgreens's reliance on its "mandatory" anti-grazing policy in terminating Hernandez, there are material questions of fact as to whether Walgreens's "delay" argument was in fact the sole reason for terminating Hernandez, precluding summary judgment in Walgreens's favor. The Court also notes that Hernandez disputes Walgreens's version of events, and contends that she attempted to pay for the chips after eating them but was unable to, that she immediately claimed the chips were hers when confronted by Potter, and that she did in fact pay for them.

Finally, Walgreens argues plaintiff has failed to raise a question of fact to establish that Walgreens's justification for her termination – violation of the anti-grazing policy – was pretext for disability discrimination. However, as Walgreens has not proffered a legitimate nondiscriminatory justification for her firing (separate and apart from her claim of disability), Hernandez need not show pretext.

## III. EEOC GUIDELINES

Walgreens argues the EEOC is barred as a matter of law from bringing this action because Congress has prohibited the EEOC from taking actions against employers who have relied on its guidance.

> U.S.C. § 2000e-5 "Enforcement provisions" sub(a) provides:
>> Power of Commission to prevent unlawful employment practices. The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 703 or 704 of this title [42 USCS §§ 2000e-2 or 2000e-3].
>
> U.S.C. § 2000e-12 sub(b) provides:
>> In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, **in conformity with, and in reliance on any written interpretation or opinion of the Commission,** or (2) the failure of such person to publish and file any information required by any provision of this title [42 USCS §§ 2000e et seq.] if he pleads and proves that he failed to publish and file such information in good faith, in conformity with the instructions of the Commission issued under this title [42 USCS §§ 2000e et seq.] regarding the filing of such information. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that (A) after such act or omission, such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect, or (B) after publishing or filing the description and annual reports, such publication or filing is determined by judicial authority not to be in conformity with the requirements of this title [42 USCS §§ 2000e et seq.]

U.S.C. § 2000e-12(b) (emphasis added). Walgreens argues it complied with the EEOC's guidance, particularly Question 35 discussed above, which is a "written interpretation or opinion" of the Commission.

In response, and pursuant to their request for judicial notice, the EEOC relies on 29 C.F.R.

§ 1601.93 which defines what documents can be relied on for purposes of establishing a "written interpretation or opinion of the Commission" pursuant to section 713 of Title VII (42 U.S.C. § 2000e-12). Docket No. 86. That regulation provides:

> Only the following may be relied upon as a "written interpretation or opinion of the Commission" within the meaning of section 713 of title VII:
> (a) A letter entitled "opinion letter" and signed by the Legal Counsel on behalf of and as approved by the Commission, or, if issued in the conduct of litigation, by the General Counsel on behalf of and as approved by the Commission, or
> (b) Matter published and specifically designated as such in the Federal Register, including the Commission's Guidelines on Affirmative Action, or
> (c) A Commission determination of no reasonable cause, issued, under the circumstances described in § 1608.10 (a) or (b) of the Commission's Guidelines on Affirmative Action, 29 CFR part 1608, when such determination contains a statement that it is a "written interpretation or opinion of the Commission."

Walgreens objects to the request for judicial notice, arguing that the EEOC should have cited this regulation in its Opposition, and because of that failure, cannot be allowed to introduce it now. Docket No. 87. Walgreens does not attack the implication raised by the CFR citation, except to note that a district court in 1970 interpreted the statute to the contrary. Docket No. 87 at 3 (citing *Vogel v. Trans World Airlines*, 346 F. Supp. 805, 806 (W.D. Mo. 1970)).[14] As an initial matter, I GRANT the request for judicial notice. While the EEOC should have cited the regulation in its Opposition, it is better for the Court to make a decision after being fully informed of all potentially applicable law. Moreover, I find that the regulation – limiting the type of written materials that can be used as a defense to an EEOC Title VII action – is persuasive and should be followed in this case. Without evidence that the requirements of C.F.R. §1601.93 have been met, *i.e.*, that the guidance relied on by Walgreens has been published in the C.F.R. as a "written

---

[14] In *Vogel v. Trans World Airlines*, 346 F. Supp. 805, 817 (W.D. Mo. 1970) the Court noted that it "appears that the Commission cannot make and publish in any form written interpretations and then restrict their legal effect within the meaning of Section 2000e-12(b) when they are relied on by the public" and concluded that EEOC Guidelines published in the Federal Register and relied on by employers fell within the § 2000e-12. That case, however, did not rely on the regulation, but instead relied on a 1967 case from the United States District Court for the District of Columbia which likewise did not address the regulation but instead considered whether interpretive rulings by the Commission had the force of law. *Air Transport Asso. v. Hernandez*, 264 F. Supp. 227, 229 (D.D.C. 1967). In the absence of any more recently or more persuasively analyzed opinions on the effect of 29 C.F.R. § 1601.93, the Court will not follow *Vogel*.

interpretation or opinion of the Commission," the "guideline defense" is not available to Walgreens.

## IV. PUNITIVE DAMAGES

Finally, Walgreens argues that punitive damages are unavailable here as a matter of law because the EEOC has no evidence that any Walgreens employee acted with "malice" or "reckless disregard" of a violation of a law.[15] Whether punitive damages will be available depends upon the employer's state of mind, and plaintiff must show that the employer intentionally or with reckless disregard took an action "in the face of a perceived risk that its actions will violate federal law . . . ." *Kolstad v. ADA*, 527 U.S. 526, 536 (1999).

The EEOC relies on the following facts to support its claim for punitive damages: (i) Hernandez's managers were aware of her disability; (ii) Hernandez told her managers and the Clark (the Loss Control supervisor) why she ate the chips (which Walgreens disputes in part); (iii) that Clark either disregarded, ignored, or did not understand and did not try to get clarification on Hernandez's explanation; (iv) and Walgreens nonetheless fired Hernandez without any attempt to accommodate her. I find that given the disputed facts in this case, summary judgment cannot be granted to Walgreens on the punitive damages issue.[16]

## CONCLUSION

For the foregoing reasons, I DENY defendant's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: April 11, 2014

WILLIAM H. ORRICK
United States District Judge

---

[15] 42 U.S.C. § 1981a(b)(1) provides: "A complaining party may recover punitive damages under this section . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

[16] I have reviewed Walgreens's and the EEOC's evidentiary objections. Docket No. 74; Reply at 15. I find that the objections are not well-taken and overrule them for purposes of the motion for summary judgment.